IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| TIMOTHY MURPHY | § | |
| v. | § | CIVIL ACTION NO. 5:16cv75 |
| TORI SCOTT | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Timothy Murphy, a prisoner of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), filed this civil action complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding in accordance with 28 U.S.C. 636(c). The sole named defendant is Tori Scott, food service manager at the Telford Unit of TDCJ-CID.

**I. Plaintiff's Complaint**

Plaintiff's statement of claim reads, in its entirety, as follows:

Meat free option, as directed by policy, provides least restrictive means of observance of my Torah Judaism beliefs and practices, insofar as diet. Normally, an offender request to official to a unit kitchen insures provision of meat free sack meals when meat inclusive sack meals are distributed. I posted two such, soon after my 01/2016 transfer to this unit. Such provisions have been in no way met. As recent as 05/2016, Defendant conveyed to laundry supervisor M. Bumdei, for whom I work, that I would continue to be denied meat free sack meals, as I have been since 01/18/16, forcing me to choose between the benefits of my religious convictions and eating - frequently.

In a Step Two grievance attached to his complaint, Plaintiff stated as follows:

Prison Policy 3.01 states that prison units will make available three (3) non-medical diets: Regular, Pork Free, and Meat Free.

The Telford Unit inventory makes provisions for peanut butter sandwiches to be served to Diets For Health with very nearly every sack meal and cheese sandwiches to those with peanut allergies. Telford inventory also permits the entire population

1

a serving of cold cereal one very nearly every day during extended lockdown periods and prunes, raisins, and/or dried cherries. Thus, the inventory does in fact include provisions for the exceedingly few vegetarian practitioners.

As a Jew, the meat free diet option provides me with the least restrictive means of adhering to kosher food laws practical [sic] during my period of incarceration, as well as health-based dietary choices.

The response by Food Service Manager II S. Cullum (and personal experience by myself) strongly indicate an effort will be made to provide meat free sack meals of comparable nutritional and caloric value as meat inclusive sack meals during distribution of meat inclusive sack meals. I have been, following the submission of grievance #2016091123, still under the burden of extortion/coercion by the Food Service Department of TO Unit to violate my religious beliefs and personal choice or to not eat by its failure to provide me with meat free sack meals as stated/defined in "Action Requested" and jeopardize my health by means of continued denials of meals (sack).

The response to this grievance appeal reads as follows:

An investigation was conducted into your allegations. Food Services Procedures Manual 19.01 states this was within policy. Every effort is made when sack meals are provided for meat free and medical sack meals. No further action is warranted by this office.

For relief, Plaintiff requests an order for the Telford Unit kitchen to provide him with appropriate food, compensatory damages in the form of court costs, nominal damages in the amount of $1.00, and punitive damages of $500.00.

## II. Plaintiff's Motion for Summary Judgment

In his motion for summary judgment (Docket No. 32), Plaintiff asserts Defendant Scott, food service manager at the Telford Unit, violated his First Amendment right to free exercise of religion by failing to provide him with sack meals which are not prohibited by his religious beliefs. He also invokes the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

After discussing the legal standards set out by RLUIPA and stating his Jewish faith is recognized by TDCJ-CID, Murphy explains the proper preparation of kosher meats and states Jewish tradition includes a tradition of vegetarianism when kosher meats are unavailable. Plaintiff acknowledges TDCJ-CID policy makes provisions for meat-free meals and every effort shall be made to provide meat-free and medical sack meals when sack meals are provided.

2

Plaintiff states the response to his grievance no. 20160197007 advised him if he chose to eat a meat free meal, he should request one from the officer on the pod. Although the response to Step One grievance no. 2016178786 quotes Defendant Scott as stating meat free sack meals are provided when sack meals are required, Plaintiff notes the response to Step One grievance no. 2017024440 advised him according to Defendant Scott, he was not on the list for meat free meals.

Plaintiff argues under RLUIPA, a substantial burden on a person's exercise of religion may be done only in furtherance of a compelling governmental interest. He contends no additional burden would be placed on the food service department to provide him with a meat-free sack meal because meat-free sack meals are routinely provided to other prisoners. Plaintiff maintains the Defendant Scott is not entitled to qualified immunity because his right to a diet consistent with his religious beliefs is clearly established under RLUIPA.

As summary judgment evidence, Plaintiff attaches three grievances from the Allred Unit (Docket No. 32-1, pp. 1, 3, and 9) indicating his name had been submitted for lay-ins to observe Jewish holy days and prisoners can request meat free meals from the officer on the pod. He also attaches a pamphlet concerning kosher foods (Docket No. 32-1, p. 6), although it is not clear who wrote this pamphlet or where it originated.

Plaintiff also attaches grievance no. 2016091123 (Docket No. 32-1, p. 12) asking about sack meals, to which the response, dated March 22, 2016, stated information received from Food Service Manager II S. Cullum revealed the Telford Unit inventory does not allow for meat free sack meals during lockdowns. In grievance no. 2016178986 (Docket No. 32-1, p. 16), Plaintiff complains of sack meals on July 10 and July 17, 2016, when he was told no meat substitutes were available. The response to this grievance, dated August 2, 2016, stated according to Food Service Manager IV Captain Scott, meat free sack meals are provided when sack meals are required.

In grievance no. 2017024440 (Docket No. 32-1, p. 18), Plaintiff complained on September 9, 2016, the lunch and dinner sack meals had two meat items, and the distributing officer told him no meat-free meals had been provided. On September 10, 2016, the dinner meal had two meat items.

3

The distributing officer told him no meat-free sack meals had been provided. On September 11, 2016, the lunch and dinner meals consisted of two meat items. The distributing officer told him no meat-free sack meals had been provided, and she would not call for a meat-free diet for him because he was not on the list for a medical diet. The response to this grievance, dated November 2, 2016, stated information received from Food Service Manager Scott revealed he was not on the list for meat free meals.

Next, Plaintiff attaches a response from Nurse Practitioner Jammie Barker stating the medical department does not do meat-free diets, but instead Plaintiff must talk to the chaplain. (Docket No. 32-1. p. 20). He sent a request to the chaplain asking if a list was maintained of prisoners whose religious practices included dietary restrictions, and the response stated no such record exists, but only a record of faith preferences as shown on the travel card. (Docket No. 32-1, p. 22).

Plaintiff sent a request to the medical department, stating he does not eat meat and cannot get meat-free diets and he has not been getting the snacks required with his diet. He suggested the medical department start documenting his weight and sugar levels because he is not eating. The response, dated July 7, 2017, stated he had to communicate with the food service department. (Docket No. 32-1, p. 24).

Plaintiff furnishes affidavits from various inmates, including statements from Edward Hill and Allen Mayberry attesting they are supposed to receive peanut butter free sandwiches, they often get peanut butter, and a statement from Ruben Jaramillo asserting on the Allred Unit, Plaintiff was on the list to receive meat-free meals.

**III. Defendant's Motion for Judgment on the Pleadings or for Summary Judgment**

Defendant Scott filed a motion for judgment on the pleadings or for summary judgment (Docket No. 34). Because she attaches matters outside the pleadings, the motion is properly construed as one for summary judgment. Fed. R. Civ. P. 12(d); *Holloway v. Alcorn Cnty.*, No. 1:13CV218-NBB-SAA, 2015 U.S. Dist. LEXIS 78393, at *2, 2015 WL 3795961 (N.D. Miss., June

4

17, 2015) (construing motion for judgment on the pleadings as motion for summary judgment because matters outside the pleadings were presented to and not excluded by the Court).

Defendant Scott argues Plaintiff's RLUIPA claim against her in her individual capacity must be dismissed because RLUIPA does not permit individual-capacity claims. Furthermore, Defendant Scott argues RLUIPA authorizes only injunctive relief, not monetary damages.

Defendant Scott asserts Plaintiff's claims are fatally conclusory, involving blanket assertions of harm and setting out no facts showing a constitutional violation occurred. Instead, Defendant Scott states Plaintiff points to two occasions on which he was allegedly denied a meat-free sack meal, which amounts to no more than a *de minimis* violation.

Next, Defendant Scott claims Plaintiff's First Amendment challenge fails because the right to a particularized meal is not clearly established. She contends Plaintiff has a meal option consistent with his religious preference in the form of the meat-free option.

Defendant Scott states Plaintiff cannot demonstrate a substantial burden on his religious exercise because the denial of only a few meals does not amount to such a burden. She also invokes her entitlement to qualified immunity as to Plaintiff's First Amendment claim.

As summary judgment evidence, Defendant Scott attaches copies of Plaintiff's grievances as well as a copy of the TDCJ food service procedures manual. Defendant Scott states this manual specifies pork shall not be served during a lockdown and every effort will be made to assure prisoners with special medical needs or those requesting meat-free trays receive the correct meals.

**IV. Plaintiff's Response**

In his response to Defendant Scott's motion for judgment on the pleadings or for summary judgment (Docket No. 46), Plaintiff contends his claim is not based on a few isolated incidents, but he only listed a few incidents as examples of what was occurring. He notes his complaint contends Defendant Scott told Plaintiff's work supervisor in May 2018 that Plaintiff would continue to be denied meat free sack meals as he has been since January 2018.

Plaintiff states the response to grievance no. 2016091123 informed him the Telford Unit inventory did not allow for meat-free sack meals during lockdowns, but the response to grievance no. 2017024440 informed him he was not on the list for meat-free meals. He states this latter response was given despite several attempts to be placed on the list, pointing to grievance no. 2017024440 (Docket No. 32-1, p. 18) and his I-60 to the medical department (Docket No. 32-1, p. 23). Plaintiff further contends he is not seeking a particularized diet but rather a meat-free option, which the prison manual claims is available. He refers to an alleged "thinly veiled attempt to extort Mr. Murphy into abandoning those convictions in favor of sustenance and/or retaliate against him for seeking relief via access to courts by continuing to deny him a dietary option that the Texas Department of Criminal Justice has mandated be made available." He argues Defendant Scott is not entitled to qualified immunity and states the Court should not bind itself to deny monetary damages against persons acting in their official capacity. He complains of an inability to perform legal research and notes he has sought appointment of counsel, which was denied.

**V. Defendant Scott's Reply**

In her reply to the response (Docket No. 50), Defendant Scott states by policy, prisoners who have submitted an I-60 inmate request form asking for a meat-free sack meal will be provided one if the necessary inventory is available to supply one during lockdowns. She does not have any I-60's from Plaintiff showing he ever requested to be placed on the meat-free list and states Plaintiff has not furnished any evidence or disclosure showing he completed the procedural steps necessary to be placed on the list. While Plaintiff filed a grievance as well as an I-60 to the medical department, Defendant Scott avers these were not I-60's requesting placement on the meat-free list.

Nonetheless, Defendant Scott states as of May 3, 2018, Plaintiff has now been placed on the meat-free list. As a result, she asserts his claims are moot. Defendant Scott also complains Plaintiff did not specify dates in his lawsuit or grievances, other than six days in July and September 2016, giving her inadequate notice of his claims.

Next, Defendant Scott states Plaintiff is permitted to and does purchase food at the commissary. Although Plaintiff states he is seeking a meat-free diet for religious reasons, Defendant Scott states Plaintiff purchases commissary items containing meat, including purchases of "chunk chicken in broth" and "chicken chili with beans" on January 23, 2018.

Defendant Scott again argues RLUIPA does not authorize individual-capacity claims and asserts her entitlement to qualified immunity. She further maintains Plaintiff does not set out a constitutional violation under the First Amendment.

## VI. Legal Standards and Analysis

### A. The Religious Land Use and Institutionalized Persons Act

The Fifth Circuit has explained the Religious Land Use and Institutionalized Persons Act does not create a cause of action against defendants in their individual capacities and thus cannot be used to obtain damages against defendants in their individual capacities. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 330-31 (5th Cir. 2009). The statute also does not create a claim for damages against defendant state officials in their official capacities because such claims are barred by the Eleventh Amendment. *Id*. at 331. Thus, the only relief available under RLUIPA is prospective injunctive relief. *See Sheppard v. Collier*, No. 1:12CV169, 2017 U.S. Dist. LEXIS 148325, at *7 n.2, 2017 WL 4020430, at *3 n.2 (E.D.Tex., July 7, 2017), *adopted by* No. 1:12-CV-169, 2017 U.S. Dist. LEXIS 147589, 2017 WL 4051738 (E.D.Tex., September 12, 2017) (citing *Sossamon*, 560 F.3d 316). To the extent Plaintiff seeks damages under RLUIPA, whether nominal, compensatory, or punitive, his claims are without merit.

Defendant Scott contends Plaintiff's claim for injunctive relief is moot because he has now been put on the meat-free list, despite the fact he did not comply with the normal procedures for placement on the list. The Fifth Circuit has explained a defendant's voluntary cessation of a complained-of activity ordinarily does not render a case moot, but government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. *Sossamon*, 560 F.3d at 325.

7

The assistant warden of the Telford Unit, L.E. Townsend, has furnished an affidavit (Docket No. 50-2, pp. 2-3) reading as follows:

> Three meal tray options are provided to all offenders at TDCJ for each meal in the offender dining area: a 'regular' tray, a pork-free tray, and a meat-free tray. Offenders are permitted to select any of the three options they choose at any meal. Offenders are likewise permitted to purchase food at the commissary, where they may select specific items they prefer or which satisfy the standard of their particular religious faith.
>
> When lockdown conditions prevent offenders from eating in the usual dining area and selecting their meals themselves, sack meals are provided to each offender. Offenders who are on specific diets set by their medical provider or who have food allergies will receive a sack meal in line with their medical restrictions. Offenders who have submitted an I-60 form requesting a meat-free sack meal will be provided one if the necessary inventory is available to supply one. Though policy directs that every effort be made to provide meat-free or pork-free sack meal options to offenders with religious preferences, unit conditions and supplies may not allow for that accommodation.
>
> A list is maintained on the unit of every offender who has requested a meat-free sack meal during unit lockdowns, and offenders are added to this list when they submit an I-60. Offender Murphy has now been added to this list, and in accordance with policy every effort will be made to provide him with meat-free sack meals during lockdowns at the Telford Unit going forward.

Warden Townsend's affidavit is entitled to a presumption of good faith, as set out in *Sossamon*. Plaintiff requested he be provided appropriate food, by which he meant placement on the meat-free sack meal list. Because this request has been accomplished, Plaintiff's request for injunctive relief is moot.[1] Plaintiff has set out no basis for relief under RLUIPA and the Defendant's motion for summary judgment on this issue is meritorious.

---

[1] Defendant Scott's reply asserts Plaintiff purchased foods containing meat at the commissary, but offers no competent summary judgment evidence to support this assertion. If Plaintiff voluntarily purchased and consumed meat products from the commissary, this could possibly cast doubt on whether providing him with meals containing meat placed a substantial burden on his religious exercise. *See, e.g.*, *Shoemaker v. Williams*, No.10-0826, 2013 WL 528306 (D. Or., February 11, 2013) (inmate had the option of following a fish-based or vegetarian diet, but made numerous purchases of non-*halal* food at the commissary); *but see White v. York*, No. 9:15-CV-0640-TJM-DJS, 2017 WL 1194514 (N.D.N.Y., March 10, 2017), *adopted by* 9:15-CV-0640, 2017 WL 1194368 (N.D.N.Y. Mar. 30, 2017)(noting inmate's purchase of processed meats from the commissary, tending to undercut the sincerity of his beliefs, but nonetheless concluding Plaintiff had a sincerely held religious belief). As in *White*, the Court will assume for purposes of this Report that Plaintiff's religious beliefs are sincerely held and not significantly undercut by any apparent inconsistencies between his actions and his professed beliefs.

B. The First Amendment Claim

Plaintiff also invokes his right to free exercise of religion under the First Amendment. The Supreme Court has explained the Free Exercise Clause of the First Amendment requires prisoners to be afforded a "reasonable opportunity" to practice their religion. *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Pedraza v. Meyers*, 919 F.2d 317, 320 (5th Cir. 1990). This means restrictions on a prisoner's right to practice his religion must be reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). In order to assist courts in making this determination, the Supreme Court has enumerated four factors: (1) whether a valid, rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right which remain open to prison inmates; (3) what impact accommodating the asserted constitutional right will have on guards and other inmates as well as the allocation of prison resources generally, and (4) whether there is an absence of ready alternatives to the regulation in question. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The summary judgment evidence shows prisoners could choose a meat-free diet option when eating in the dining hall while the unit was not on lockdown. During lockdowns, when prisoners could not go to the dining hall, sack meals were provided. The prison unit maintained a list of prisoners who sought meat-free sack meals.[2] Prisoners wishing to be added to the list had to submit an I-60 inmate request form asking for placement on the list. There was no record of Plaintiff submitting an I-60 request form asking to be placed on the meat-free diet list. As a result, as Plaintiff was advised in the response to grievance no. 2017024440 (Docket No. 32-1, p. 18), he was not on the list for meat free meals.

---

[2] The Telford Unit, where Plaintiff is confined, has a long-standing policy of maintaining a meat-free diet list. *See McClure v. Baggett*, No. 5:10cv79, 2010 WL 2163168 (E.D.Tex., May 7, 2010), *adopted by* 2010 WL 2163174 (E.D.Tex., May 24, 2010) (noting the Telford Unit had a meat-free diet list in 2010).

The Fifth Circuit has stated in the context of a First Amendment free exercise claim, the pertinent question is not whether the inmate has been denied a specific religious accommmodation, but whether, more broadly, the prison affords the inmate opportunities to exercise his faith. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 861 (5th Cir. 2004). In *Long v. Boehnemann*, No. 4:05cv3789, 2006 U.S. Dist. LEXIS 74532, 2006 WL 2935200 (S.D.Tex., October 12, 2006), the Fort Bend County Jail had a religious practices plan in place. Plaintiff Long, a Muslim, wanted a sack lunch during Ramadan to keep in his cell until after sunset, but he had not requested a religious accommodation under the jail's plan. The district court observed "because Long did not follow proper procedures by requesting a religious accommodation during Ramadan, he cannot blame Sgt. Boehnemann or anyone else at the jail for imposition that he experienced. Thus, Long fails to demonstrate that he was denied an opportunity to exercise his religious beliefs in violation of the First Amendment."

In the same way, the Telford Unit had a procedure to request placement on the meat-free sack meal list, but there is no evidence Plaintiff ever followed it. He states he made requests in various forms concerning the meat-free diet list, but he does not allege, much less show, he ever followed the proper procedures by submitting an I-60 inmate request form specifically asking to be placed on the list. Plaintiff offers nothing to show the fact he was not on the meat-free diet list, and therefore did not receive meat-free sack meals on a number of occasions, amounted to a constitutional violation by Defendant Scott. His First Amendment free exercise of religion claim is without merit.

C. Retaliation

In his response to Defendant Scott's motion for summary judgment, Plaintiff refers to a "thinly veiled attempt to extort Mr. Murphy into abandoning those [religious] convictions in favor of sustenance and/or retaliate against him for seeking relief via access to courts by continuing to deny him a dietary option that the Texas Department of Criminal Justice has mandated be made available." (Docket No. 46, p. 2). The Fifth Circuit has held a claim raised for the first time in

response to a motion for summary judgment is not properly before the court. *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

Even if Plaintiff's retaliation claim were properly before the Court, it would lack merit on its face. A prisoner who asserts a retaliation claim must assert specific facts; mere conclusory allegations are not enough. *Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988). The elements of a retaliation claim are the invocation of a specific constitutional right, the defendant's intent to retaliate against the plaintiff for his exercise of that right, a retaliatory adverse act, and causation, which is a showing that but for the retaliatory motive, the action complained of would not have occurred. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief he is the victim of retaliation. *Johnson*, 110 F.3d at 310, *citing Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).

Plaintiff presents no specific facts showing direct evidence of retaliation or a chronology from retaliation may plausibly be inferred. Nor has he shown that but for the alleged retaliatory motive, the action complained of would not have occurred. The summary judgment evidence demonstrates Plaintiff was not on the list for meat-free sack meals because he did not follow the proper procedures to be placed on the list and not out of any retaliatory motive.

Plaintiff points to an alleged remark by Defendant Scott to the laundry officer, Plaintiff's work supervisor, to the effect Plaintiff would continue to be denied meat free sack meals. While such a comment may have been ill-advised, it does not demonstrate a retaliatory motive, particularly in light of the fact when the remark was made, Plaintiff was not on the meat free sack meal list. To the extent Plaintiff presents a retaliation claim, such a claim lacks merit even were it properly before the Court, which it is not.

11

D. Eleventh Amendment and Qualified Immunity

Defendant Scott invokes her entitlement to Eleventh Amendment immunity as to claims against her for damages in her official capacity and qualified immunity as to claims for monetary damages against her in her individual capacity. As an official of the State of Texas, Defendant Scott is entitled to Eleventh Amendment immunity from monetary damages in her official capacity. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

Qualified immunity protects government officials from liability for monetary damages in their individual capacities insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Thompson v. Mercer*, 762 F.3d 433, 436-37 (5th Cir. 2014). Claims of qualified immunity require a two-step analysis, which may be done in either order: first, the court determines whether a constitutional right would have been violated on the facts alleged, and second, whether the right was clearly established at the time of the alleged violation. *Kitchen v. Dallas County*, 759 F.3d 468, 476 (5th Cir. 2014). Even if the official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if her conduct was objectively reasonable. *Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998).

After the defendant properly invokes qualified immunity, the plaintiff bears the burden to rebut its applicability. *Kovacic v. Villareal*, 628 F.3d 209, 211 (5th Cir. 2010). Such a rebuttal requires a showing all reasonable officials, similarly situated, would have known the defendants' acts violated the Constitution. *Tamez v. Matheny*, 589 F.3d 764, 770 n.2 (5th Cir. 2009); *Thompson v. Upshur County*, 245 F.3d 447, 460 (5th Cir. 2001). Even if the official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Jones*, 132 F.3d at 1052. Conclusory allegations are insufficient to overcome the qualified immunity defense. *Williams-Boldware v. Denton County, Tex.*, 741 F.3d 635, 643-44 (5th Cir. 2014).

Plaintiff's pleadings fail to meet his burden of showing Defendant Scott violated a clearly established constitutional right or that all reasonable prison officials, similarly situated, would know Defendant Scott's conduct violated the Constitution. Defendant Scott is entitled to qualified immunity from the claims against her for monetary damages in her individual capacity and Eleventh Amendment immunity from claims for damages against her in her official capacity.

## VII. Conclusion

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Sec. and Exch. Comm'n v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994); *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 948 (5th Cir. 1992). The plaintiff cannot oppose summary judgment by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated or speculative assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant. *Id.*

The courts have no obligation to sift the record in search of evidence to support a party's opposition to summary judgment. *Adams v. Traveler's Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2008). Instead, a party opposing summary judgment must identify specific evidence in the record which supports the challenged claims and articulate the precise manner in which the evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

A review of the pleadings and the competent summary judgment evidence shows there are no disputed issues of material fact and Defendant Scott is entitled to judgment as a matter of law. Her motion for summary judgment is meritorious, and it is accordingly

**ORDERED** the Defendant Tori Scott's motion for judgment on the pleadings or for summary judgment, construed as a motion for summary judgment, (Docket No. 34) is **GRANTED.** It is further

**ORDERED** the above-styled civil action is **DISMISSED WITH PREJUDICE.** Because this case was dismissed on summary judgment, its dismissal shall not count as a strike for purposes of 28 U.S.C. §1915(g). It is further

**ORDERED** any and all motions which may be pending in this civil action, specifically including but not limited to the Plaintiff's motion for summary judgment (Docket No. 32), are **DENIED.**

**SIGNED this 22nd day of May, 2018.**

_____
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE